IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Blount,    #289573, ) | |
| ) | Civil Action No. 3:07-3320-TLW-JRM |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Warden McCormick Correctional Institution, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, William Blount ("Blount"), is an inmate at the South Carolina Department of Corrections serving a sentence of twenty years imprisonment for armed robbery and two counts of kidnapping, fifteen years imprisonment for second degree burglary, and five years imprisonment for possession of a firearm during a crime of violence (all concurrent), plus a consecutive sentence of three years for conspiracy to escape. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c) and (e), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record,[1] on December 13, 2007. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on December 19, 2007, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on January 14, 2008.

---

[1] Blount has attached various documents to his petition.

**Background**

In the early morning hours of July 1, 2000, Blount and his brother-in-law, Clarence Jones, broke into a Bojangles restaurant in Richland County, kidnaped two employees, and forced one of the employees to open the safe and removed the money stored therein. An employee called 911 and law enforcement authorities arrived while Blount and Jones were at the scene. They fled, but were captured shortly thereafter.

Blount was a pretrial detainee at the Richland County Detention Center on September 17, 2000 when a correctional officer, Alvin S. Glenn, was murdered. Blount and others moved unguarded in the confusion that ensued and attempted to escape. Blount jumped from the roof and broke both ankles. Thereafter, he was moved to the South Carolina Department of Corrections for security purposes.

Tom Elliott was appointed to represent Blount. Eliott was able to negotiate a plea, and on December 11, 2002 Blount pled guilty and was sentenced as indicated above. No direct appeal was filed.

Blount filed a pro se application for post-conviction relief ("PCR") on February 18, 2003. (App. 23),[2] and Tara Dawn Shurling was appointed to represent him. She filed an amended application. (App. 30). Blount testified, and Elliott was called as a witness by the State. On November 15, 2005, the PCR court entered an order denying the PCR. (App. 114).

A Johnson[3] petition for writ of certiorari was filed on Blount's behalf by the South Carolina Office of Appellate Defense raising the following issue:

---

[2]The appendix prepared in connection with the appeal from the denial of Blount's PCR is attached as Exhibit 1 to Respondent's memorandum. It is referred to as "App. ___." Exhibit 2 is a supplemental appendix ("Res. Mem., Ex. 2").

[3]Johnson v. State, 294 S.C. 310, 364 S.E.2d 2001 (1988).

2

> Trial counsel was ineffective in failing to explain fully sentencing consequences in the case.

(Res. Mem., Ex. 18). Blount filed a pro se petition for writ of certiorari raising the following issues:

1. The Court failed to advise Applicant of the mandatory minimum sentence and the elements involved.

2. The Court failed to advise Applicant of the two (2) year supervision program he must serve upon completion of his no parole 85% sentence.

(Res. Mem., Ex. 19). The petition was denied by the South Carolina Court of Appeals on August 29, 2007. (Res. Mem., Ex. 20). The remittitur was returned on September 14, 2007.

## Grounds for Relief

Blount asserts that he is entitled to a writ of habeas corpus on the following grounds:

GROUND ONE:      Ineffective Assistance of Counsel

SUPPORTING FACTS:      Attorney refuse [sic] to explain to me that I would be pleading guilty to a sentence where I have to do about all the time the Judge give me, and I was mislead by my attorney.

GROUND TWO:      Violation of due process

SUPPORTING FACTS:      Petitioner guilty pleas were given involuntarily, because he was not informed of the parole sentencing consequence which meant that the please [sic] were given in violation of the fifth and sixth Amendment of the U.S. Constitution.

GROUND THREE:      Unaware of Right to Appeal Guilty Pleas

SUPPORTING FACTS:      My attorney refuse to advice [sic] me that I could appeal my guilty pleas, because I wouldn't have pleaded [sic] guilty if I had know I have to do this much time.

## Discussion

Since Blount filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

4

1.      Procedural Bar

Respondent argues that Grounds 2 and 3 in the present petition were not properly presented to the state courts for review and are, therefore, procedurally barred. Respondent concedes that Ground 2 was arguably presented to state appellate court in Blount's pro se petition for writ of certiorari which asserted that the trial court violated his right to due process. However, review of the record shows that this issue was not presented in the PCR application, nor raised during the evidentiary hearing. It was not addressed in the PCR court's order of dismissal. Ground 3 was not presented to the South Carolina appellate courts.

After denial of the PCR, appellate counsel filed a <u>Johnson</u> petition for writ of certiorari[4] with the South Carolina Supreme Court. In <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present. Counsel is required to file the <u>Johnson</u> petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal. A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the <u>Johnson</u> petition. The applicant may file a pro se brief raising additional issues. <u>Foster v. State</u>, 298 S.C. 306, 379 S.E.2d 907 (1989). In ruling on a <u>Johnson</u> petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or issues raised in the <u>Johnson</u> petition and any issues raised by the applicant in his pro se brief. Further, the South Carolina Supreme Court conducts a review of the record when a <u>Johnson</u>

---

[4] All appeals from the denial of a PCR application are made by seeking a writ of certiorari from the South Carolina Supreme Court. See SCACR 227. The Supreme Court transferred Blount's case to the South Carolina Court of Appeals.

5

petition is filed.  King v. State, 308 S.C. 348, 417 S.E.2d 868 (1992).  In so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court.  The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria.  Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR.  See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP.  Bryson v. State, 328 S.C. 236, 493 S.E.2d 500 (1997).  Counsel is required to object to any deficiencies in the order of the PCR court.  McCullough v. State, 320 S.C. 270, 464 S.E.2d 340 (1995).  This duty falls on the PCR applicant if not raised by counsel in the Johnson petition.  See Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127, 128 n.2 (1992) ("the general rule [is] that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review.").  See also, Padgett v. State, 324 S.C. 22, 484 S.E.2d 101 (1997) (issues not ruled on by PCR court are not preserved for appeal).  Thus, when considering a Johnson petition, the South Carolina Supreme Court considers only those issues raised by the Johnson petition, raised in any pro se brief or petition filed by the applicant, and those issues specifically ruled on by the PCR court.

The undersigned concludes Grounds 2 and 3 in the present petition are procedurally barred and should not be considered by this court.  Murray v. Carrier, 477 U.S. 478, 496 (1988).

2.	Ineffective Assistance of Trial Counsel

In his first ground for relief, Blount asserts that his trial counsel misinformed him concerning parole eligibility. This issue was thoroughly presented during the PCR hearing and resolved against Blount in the order of dismissal. It was exhausted in the Johnson petition, and respondent concedes it is properly before this court.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the

>circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment). Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (parole eligibility is a collateral consequence of a plea). "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

Under these principles, if an attorney substantially misinforms a defendant about the date he will become eligible for parole, and the defendant decides to plead guilty instead of going to trial based on the misinformation, the defendant will be entitled to relief. Strader, supra; O'Tuel v. Osborne, 706 F.2d 498 (4th Cir. 1983); and Ostrander v. Green, 46 F.3d 347 (4th Cir. 1995).[5]

The record shows that Blount was concerned about parole eligibility prior to his plea. He wrote Elliott on October 21, 2002 asking specific questions about the issue. Elliott responded with a letter dated October 24, 2002. This response was introduced into evidence at the PCR hearing. (App. 81). However, it was not included in the transcript. The first page of the letter is a part of the record. (Res. Mem., Ex. 23).

Blount testified that the letter was contradictory, and he was left with the impression that he would be eligible for parole on all charges after serving one-third or one-fourth of his sentence. (App. 81-83).

---

[5]Ostrander concerned misadvice about eligibility for a work release program.

The portion of the letter in the record states:[6]

> I am in receipt of your letter of October 21, 2002. Be advised that I have made the proposal to cap your charges at 20 years, together with a consecutive negotiated plea of 3 years for the attempted escape. That is being considered. I will let you know what the Solicitor determines.
>
> Answering your specific questions posed in your letter, be advised of the following:
>
> 1. The charge of attempted escape carries from 1 to 15 years. This crime is not designated as a violent crime in § 16-1-60 of the South Carolina Code of Laws. Therefore, it would be considered a non-violent crime.
>
> 2. The 25 months that you have served following the attempted escape should be credited you in any sentence given pursuant to a plea.
>
> 3. Service of the time for an attempted escape sentence would start to run only after your max-out on the armed robbery and other charges. That, of course, under the proposal, would be 29 years. With good-time and other credits, that can be reduced to 17 years, or 85% of the sentence. Designation of crimes as violent or non-violent do not have any relationship to the 85% requirement under the south Carolina Criminal Classification System. The "no parole" offenses which require a person to serve a maximum of 85% of a sentence relate only to Class A, B, and C felonies, which require sentences of not more than 20 years. The designation of violent/non-violent determines the length of time one is required to serve before he is eligible for parole for that offense. For a non-violent offense, a person can be eligible for parole after service of one-fourth (1/4) of his sentence. For a violent offense, he must serve one-third (1/3) of the sentence before he is eligible for parole for that.

Elliott testified that his letter was in response to a letter from Blount asking specific questions. He indicated that paragraph three of his letter concerned how the sentence for the conspiracy to escape charge would interplay with the sentences on the other charges. The letter correctly advised Blount that he would have to serve 85% of his sentences for the charges involving

---

[6]Blount made handwritten notations on the letter which are not recited.

10

the Bojangles robbery, i.e, approximately 17 years of the 29 years which had been discussed at that time.[7] According to Elliott, the last part of the letter quoted above, discussing parole eligibility for violent and non-violent offenses pertained only to the attempted escape charge,[8] later negotiated to conspiracy to escape. Elliott also testified that he discussed the issue with Blount and that Blount was well aware he would have to serve 85% of the sentences relating to the Bojangles robbery. (App. 105).

At the conclusion of the hearing, the PCR court described the letter as "(c)onfusing but accurate." (Res. Mem., Ex. 2, p. 76). In the order of dismissal, the PCR court recited the testimony and applied the Strickland test, finding that Elliott had not been ineffective. The undersigned concludes that this finding is not contrary to, or an unreasonable application of, federal law. Although the letter of Elliott is incomplete and somewhat confusing, Blount has not shown that Elliott misadvised him as to parole eligibility.

## Conclusion

Based on a review of the record, it is recommended that respondent's motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

           Respectfully submitted,

           s/Joseph R. McCrorey
           United States Magistrate Judge

June 23, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[7] After the letter was written, the State agreed to the 20-year cap mentioned in the letter's introductory paragraph.

[8] Paragraph one of the letter explains that attempted escape is classified as a non-violent crime under South Carolina law.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).